## BAUM BROS. v. BOWEN.

1. OUSTER—REAL PROPERTY.—One tenant in common may maintain an action for his part of the common realty against his cotenant, who has ousted him.

2. JURY—NONSUIT.—This case should have gone to the jury to determine whether the ancestor bought the land from her brothers or took it under her father's will.

3. THIS WILL construed to devise the whole land to the boys, if they so elect, and they to pay the girls their shares; or, if not, then the whole land to all the children to be divided, or sold and proceeds divided. CHIEF JUSTICE McIVER *dissenting*.

Before KLUGH, J., Kershaw, September, 1897. Reversed.

Action for possession of real estate by Baum Bros. *v*. A. H. Bowen and John Counts. From judgment of nonsuit, plaintiffs appeal.

*Mr. Thos. J. Kirkland,* for appellants, cites: *On doctrine of conversion:* 22 S. C., 274; 23 S. C., 513; 46 S. C., 230; 5 Rich. Eq., 202; 23 S. C., 232.

*Mr. J. T. Hay,* contra, cites: *On construction of will:* 22 S. C., 274. *One tenant in common cannot maintain this kind of action against his cotenant;* 3 McC., 205.

Oct. 27, 1898. The opinion of the Court was delivered by
MR. JUSTICE JONES. This is an action to recover the
possession of real estate. The appeal is from an order of
nonsuit, and involves the construction of the will of Charles
Bailey, under whom all parties claim. The relevant clauses
of the will are as follows: "And it is my will, that upon
my said wife ceasing to be my widow either by death or
marriage, which ever shall first happen, the lands or plan-
tation shall belong to my male children, if they are disposed
to take it on the following terms, that is to say, it is to be
valued by three impartial disinterested men, who are good
judges, which the said amount of valuation so decided on
by the three men, it is my will that it be divided into as
many shares as I have children, and the parts or shares that
belong to my female children, my will is that it be paid
over to them by my male children; but if my male children
don't feel disposed to comply with the above terms, they
may sell the whole and divide the whole between them,
share and share alike, and I do hereby give the same to
them after happening of either of those events, to all my
children." By a subsequent clause of the will the interests
of the daughters in his estate were limited as follows: "All
the property which each of my daughters shall at any time
receive from my estate shall be binding to them respect-
fully for and during the term of their natural or respective
lives, and not subject or liable to the debts, contracts or
incumbrances of their husbands, and the same is hereby
given and bequeathed to them, my said daughters, and at
their respective deaths to the issue of their respective
bodies." The testimony offered by plaintiffs bearing upon
the will was as follows: "The estate of Charles Bailey was
divided in pursuance of the will of Charles Bailey. The
division was made by appraisers—Mr. James Team, W. D.
Hogan, and J. S. Cloud. The boys, under the provisions of
the will, decided to take the land and pay the girls their
share in money. The land was then divided among the
boys. But the boys could not pay the girls, and gave them

part of the land as their share, and paid them in money the balance due them. The boys settled with some of the girls entirely in land. The land was sold to them at the appraised value. The 150 acres of land now in question in this case was a portion, we, the boys, sold and gave my sister, Lavinia Bowen, in lieu of her part of the estate."

Judge Klugh's ruling on the motion for nonsuit was as follows: It is considered by the Court that the plaintiffs claim title through the said Lavinia Bowen, that she did not take the lands in controversy under the will of her father, Charles Bailey, but that whatever title she had was derived from her brothers, who elected to take the land and pay their sisters as directed by the will, and who, as appears from the testimony offered by plaintiffs, did pay their sisters partly in money and partly in land; that the land, therefore, stands as if Lavinia Bowen had invested her money in it; that the money being personalty, the limitations of it under the will, which would have created an estate in fee conditional in her as to lands, vested in her an absolute estate in personalty, and the land standing as the money invested in it, passed, upon her death, to her distributees under the statute, and A. H. Bowen, defendant, being her husband, would be entitled to an interest of one-third therein. It is, therefore, adjudged, that upon the plaintiffs' evidence they are tenants in common in the land in controversy with A. H. Bowen, defendant, and, therefore, cannot maintain an action in this form against the defendants, and the motion for a nonsuit is granted.

Appellants contend that the Court erred in holding under the will and testimony adduced that Mrs. Lavinia Bowen took her share of the land as personalty, and in not holding that the limitation was to the issue of the daughters as purchasers. The testimony showed that Mrs. Bowen was in possession of the land in question at her death, and that she left surviving her as her heirs at law, her husband, A. H. Bowen, and four children, Elliott, Earle, Eva, and Eunice. The testimony further showed that plaintiffs have

acquired all the interest of the four children in said land. Under appellant's view that the four children took the whole land as purchasers under the will, plaintiffs were entitled to recover the whole land; under the view of the Circuit Court, plaintiffs were tenants in common with the defendant, Bowen, and could not maintain this action.

We think the nonsuit was improper, even if the Circuit Court's construction of the will is correct, since under that view there was evidence which entitled plaintiffs to go to the jury. The answer of defendant was a general denial, the statute of limitations, and the presumption from twenty years possession. There was evidence tending to show that defendant, Bowen, was in exclusive possession of the land, that he refused to treat with plaintiffs in reference to the land, and repudiated any rights therein on the part of plaintiffs. This tended to show ouster. A tenant in common may bring a possessory action for land against his cotenant in case of an ouster. This rule is recognized in *Martin* v. *Quattlebaum*, 3 McCord, 205, cited by respondent to sustain the ruling of the Circuit Court. See, also, *Taylor* v. *Stockdale*, 3 McCord, 302; *Harvin* v. *Hodge*, Dudley, 23. In such case, of course, the recovery is for the undivided share of the ousted cotenant.

But we also think the nonsuit was improper, because there was some evidence tending to show that Mrs. Lavinia Bowen received the land in question as her share of the land devised, in which case the limitation to the issue of her body would apply. The testimony was not so wholly one way as to warrant the conclusion, on a motion for a nonsuit, that Mrs. Bowen bought the land from the sons of the testator, and paid for it with money coming to her under the will. It should have been left to the jury to determine, under proper instructions, whether Mrs. Bowen really bought the land from the sons of the testator, or whether she merely received it under the will as her share of the devised land. If the former, plaintiffs, on proof of ouster, would be entitled to recover their

undivided two-thirds interest in the land as tenants in common with the defendant, Bowen; if the latter, plaintiffs, otherwise establishing their case, would be entitled to recover the whole land.

Under our construction of the will, the land of the testator was devised to all his children, share and share alike, with the right of election to the sons to take the whole land on certain specified terms or conditions, viz: to cause an appraisement thereof by disinterested and competent men, and to pay over to the daughters their share of the appraised value in money. This, we think, is clear from the languge of the will, which we again quote, the words in brackets and the italics are ours, put in to indicate our construction: .* * * "the lands or plantation shall belong to my male children, if they are disposed to take it on the following *terms* (then follows the terms, impartial appraisement *and* payment over to the daughters their share of the appraised value); but if my male children don't feel disposed to comply with the above terms, they may sell the whole and divide the whole (land or its proceeds if sold) between them (all the children), share and share alike; and I do hereby give the same (the whole land) to them (all the children), after the happening of either of those events (the death or marriage of the testator's wife), to all my children." The words, "they may sell the whole and divide the whole," do not indicate a bequest of money to the daughters, but a partition of the land in kind, or its proceeds if sold. The last clause above quoted clearly shows a devise of the whole land to all the children, on the death or marriage of the testator's wife, and may be properly read as preceding the clause providing the terms upon which the sons might take the whole land. These terms clearly were not a mere disposition to take the whole land and to pay the daughters their share of the appraised value in money, if they could, but meant an unchanged election to take the whole land, and also the payment to the daughters of their share of the appraised value. Whether, then, the daugh-

ters took money instead of land, under the will, depends
upon whether the evidence shows a compliance by the sons
with the terms and conditions upon which the sons had the
option of taking the whole land. To warrant the Circuit
Judge, on a motion for nonsuit, to say that those terms have
been complied with, the evidence should not admit of any
other view. Now, it is true, there was evidence that the
boys decided to take the whole land and pay the girls their
share in money, and that the sons divided the land among
themselves; but there was also evidence tending to show
that this plan fell through, as the boys were unable to pay
the girls their share in money. So far as Mrs. Bowen is
concerned, the testimony was that the land in question was
a portion sold or given to her, "*in lieu of her part of the
estate.*" There was no evidence that Mrs. Bowen took any
deed of conveyance from the sons, which would seem to
have been proper and natural if the parties regarded the
title to the whole land as having vested in the sons, under
the will. It may be conceded, that if the sons elected to
take the whole land, and the daughters really accepted the
sons as their debtors to the amount of their share of the ap-
praised value, and then took, as purchasers from the sons,
a part of the devised lands in payment of this indebtedness,
then there was, practically, a compliance by the sons with
the terms upon which title to the whole land should belong
to them. But the evidence to this end was not so conclu-
sive as to take the case from the jury by nonsuit.

The judgment of nonsuit is reversed, and the case re-
manded for trial.

MR. JUSTICE POPE concurs in the result.

MR. JUSTICE GARY concurs in the result because, there
being some evidence of ouster, the case should have been
submitted to the jury.

MR. CHIEF JUSTICE MCIVER, *concurring in result.* I
concur in the result, because there was *some* evidence from

which the jury might infer that there was ouster. But I am not prepared to assent to the view presented as to the construction of the will of Charles Bailey. It seems to me that Lavinia Bowen did not take her title to the land in dispute under Bailey's will, but that she took such title, practically, by purchase from her brothers. The sons, certainly, elected to take the land, as they were allowed by the will to do, at a valuation to be made by appraisers, and to pay their sisters their shares *of such valuation* in money, for the undisputed testimony is: "The boys, under the provisions of the will, decided to take the land and pay the girls their shares in money. *The land was then divided among the boys*" (italics mine). What, therefore, Mrs. Bowen took under the will was money—*not* land—and if so, it is conceded that she took the money as her absolute property, not·subject to any limitations over to her children. Hence the land which she acquired from her brothers in payment of their *debt* to her, she held as her absolute estate, which, upon her death intestate, descended to her heirs at law, of whom her husband was one. The fact that the sons, *after their election to take the land*—after the land was divided among the boys—found that they were unable to pay the amount due their sisters *in money*, and were compelled to pay them, in whole or in part, in land, cannot affect the question; for, practically, it was the same as if the sons had sold to a third person so much land as·was necessary to raise the amount due their sisters, and paid the proceeds of such sale to their sisters in money; and if the sisters chose to accept payment of what was due them, in land instead of money, cannot affect the question, as it would be the same, in effect, as if the sisters had been paid in money, and invested such money in the land. According to my view of the terms of the will, there was no devise of land to the daughters *in any event*. The testator manifestly intended that his sons should have the whole of the land, if they were willing to take the same at a valuation to be fixed by appraisers, and that *the amount of such valu-*

*ation* should be equally divided amongst all of his children, the sons paying to the daughters their shares in money. But if the sons did not choose so to take the land, then the sons were empowered to sell the same—that is, the land—and *the proceeds of such sale* were to be divided amongst all the children—daughters as well as sons—share and share alike. So that, in no event, was there any devise of land to the daughters.